BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

WILLIAM FRENTZEN (LABN 24421)
SUSAN E. BADGER (CABN 124365)
S. WAQAR HASIB (CABN 234818)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Susan.Badger@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No CR 14-0196 CRB |
| | ) | |
| Plaintiff, | ) | UNITED STATES' SENTENCING MEMORANDUM |
| | ) | |
| v. | ) | |
| | ) | Date: January 8, 2018 |
| XIU YING LING LIANG, | ) | Time: 10:00 a.m. |
| aka ELAINE LIANG, | ) | Court: Hon. Charles R. Breyer |
| | ) | |
| Defendant. | ) | |

UNITED STATES' SENTENCING MEMORANDUM (ELAINE LIANG)
CR 14-0196 CRB

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

DISCUSSION .................................................................................................................................1

    A.    Statement of Facts............................................................................................................1

        1.    Count 177 Offense Conduct.......................................................................................1

        2.    Relevant Conduct, Including Liang's Connection to the Chow Criminal Enterprise ..........................................................................................................2

    B.    Calculation of Liang's Sentencing Guideline Range............................................................8

    C.    Government's Sentencing Recommendation...................................................................10

CONCLUSION.............................................................................................................................12

UNITED STATES' SENTENCING MEMORANDUM (ELAINE LIANG)
CR 14-0196 CRB                                 i

TABLE OF AUTHORITIES

Federal Cases

*United States v. Barragan*, 871 F.3d 698 .......................................................................................... 8

Federal Statutes

18 U.S.C. § 1962(d) ........................................................................................................................ 1

18 U.S.C. § 3553(a) ............................................................................................................. 10, 11, 12

Federal Rules

U.S.S.G. § 1B1.3(a)(1) ................................................................................................................ 8, 9

# INTRODUCTION

Defendant Xiu Ying Ling Liang, also known as Elaine Liang, is charged in the Second Superseding Indictment in the instant case with RICO conspiracy in violation of 18 U.S.C. § 1962(d) in connection with her participation in the criminal enterprise headed by co-defendant Raymond "Shrimpboy Chow." *See*, Document 671, Count One. The indictment also charges Liang with numerous money laundering counts, each in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i). *Id*. *See* Counts 167-168, 172-173, 177-178, 179-180, 185-186, 189-190, 191-192, 193-194, 196-197, 198-199, and 202-203.[1]

On January 4, 2017, Liang entered a guilty plea to a single count of money laundering -- Count 177. The remaining counts, including the RICO conspiracy charge, remain outstanding. There is no plea agreement between Liang and the United States.

Sentencing is scheduled to take place before this Court on January 8, 2018 at 10:00 a.m. The United States submits the following sentencing memorandum in order to (1) set forth the offense conduct; (2) discuss the applicable law and the government's calculation of the sentencing guideline range that applies to Liang; and (3) advise the Court of its sentencing recommendation.

# DISCUSSION

### A. Statement of Facts[2]

#### 1. Count 177 Offense Conduct

From August 9, 2013 through December 6, 2013, Liang and her associates paid UCE 4599 to launder approximately $1.6 million cash proceeds from their marijuana trafficking operation. As described below, Liang met UCE 4599 through Chow and Chow's right-hand man, George Nieh, and asked UCE 4599 to provide money laundering services for her and her associates. Specifically, she and her partner – her son and fugitive co-defendant Serge Gee – needed cash transported from the East Coast

---

[1] Defendant Elaine Liang is not related to co-defendants Tina Liang or Jane Liang.

[2] This statement of facts is based on information contained in investigative reports prepared by agents at the time the events occurred, audio recordings of conversations made by FBI undercover agent UCE 4599, transcripts of intercepted conversations in Chinese, the testimony of UCE 4599 at the Chow trial in November and December 2015 (the transcripts of which are available publicly), and other records made and/or obtained by the FBI in the course of the investigation. Where the instant statement of facts includes quotes from trial testimony, the transcript citation is provided.

UNITED STATES' SENTENCING MEMORANDUM (ELAINE LIANG)
CR 14-0196 CRB                                           1

to San Francisco. When Liang learned through Chow and Nieh of UCE 4599's criminal activities and his connections to the East Coast and San Francisco, she asked UCE 4599 to provide money laundering / cash transfer services and UCE 4599 agreed. UCE 4599 understood that the cash that Liang needed laundered was proceeds from marijuana trafficking.

As reflected in the money laundering charges listed above, the process worked as follows: either Gee, co-defendant Gary Chen, or an unidentified Liang/Gee associate would deliver cash to a purported associate of UCE 4599 in Boston or Atlanta. In each instance, UCE 4599's associate was an undercover FBI agent. The goal and intent of the delivery was to provide a safe and convenient way for Liang and Gee to move large quantities of cash from the East Coast to San Francisco. Each time a cash delivery was made, Laing, Gee, and/or co-defendant Anthony John Lai would meet with UCE 4599 or another undercover agent in San Francisco a few days later and UCE 4599 or the other undercover would deliver the equivalent amount of cash, minus UCE 4599's service fee.

Count 177, the charge to which Liang elected to plead guilty, is an example of this process in action. On September 3, 2013, an unidentified man and woman who were purported associates of Gee and Liang delivered $76,030 in cash to an undercover agent in Atlanta. The undercover agent made arrangements for the delivery via text and phone calls with Gee. That delivery of the money is charged in Count 177 of the indictment. Count 178 charges the other part of the transaction. That is, three days later, on September 6, 2013, an undercover FBI agent posing as an associate of UCE 4599 met with Gee outside a Starbucks in San Francisco and delivered a FedEx box containing $73,060. UCE 4599 retained a service fee of approximately 10%.

At the September 6, 2013 meeting with UCE 4599's associate, Gee said that he was going to have an additional $400,000 that he wanted to have laundered in the next two weeks. Gee said he had another friend that may want to retain UCE 4599's services; the friend had money coming from New York, Boston, and Houston.

### 2. Relevant Conduct, Including Liang's Connection to the Chow Criminal Enterprise

The Atlanta-San Francisco transaction charged in Counts 177 and 178 is one of eleven similar money laundering transactions which Liang, Gee, and their associates – including, in some cases, Chow

and Nieh – were involved.  Notably, Chow was charged in seven of those transactions, *i.e.* the transactions represented by Counts 167, 172, 177, 179, 185, 189, and 193, and was convicted of all of those charges at trial.  Nieh has pled guilty to all of the money laundering charges that involve him, Liang, and Gee and is awaiting sentencing.  Defendants Chen and Lai, who were not charged in the Count One RICO, pleaded guilty to money laundering pursuant to plea agreements with the United States.  Each admitted that the money involved proceeds from drug trafficking activities engaged in by himself and codefendants Liang, Gee, and others.  *See*, Documents 1668, 1669.

Between August 9, 2013 (Count 167) and December 5, 2013 (Count 202), on eleven occasions, either Gee or a Liang/Gee associate delivered a total of $1,557,175 in cash to an undercover agent in Atlanta or Boston for the purpose of having it laundered.  On eleven occasions between August 11, 2013 (Count 168) and December 6, 2013 (Count 203), UCE 4599 or another undercover agent delivered the equivalent cash, minus service fee, to Liang, Gee, and/or Lai.  On five of those occasions, Liang was there to receive the money personally.  In total, Liang and Gee took delivery of $1,495,238 in cash.

As is readily apparent from the evidence described below, Liang's culpability is not limited to her admitted participation in the single count of money laundering to which she elected to plead guilty. The entire amount of money Liang and Gee provided to undercover agents to launder is relevant conduct.  Moreover, the evidence shows that Liang's money laundering with UCE 4599 was facilitated and approved by Chow and took place as part of the activities of Chow's criminal enterprise.  As such, Liang's relevant conduct includes other foreseeable money laundering conducted by members of the enterprise with UCE 4599.  The following evidence describes Liang's connection to the Chow enterprise and her agreement to participate in the money laundering activities of the enterprise.

UCE 4599 first met Liang relatively early in his relationship with Chow when Chow introduced Liang as the owner or manager of the Kabuki Karaoke lounge during a visit on April 13, 2011.  This was the same visit when Chow pulled in close to UCE 4599 and said something to the effect of "I'm not involved in any criminal activity anymore, but I know and approve of what's going on on the streets." Chow Trial Transcript, v. 9, at 1347-50.

UCE 4599 next encountered Liang on February 13, 2012 at the Hilton Hotel where UCE 4599, Nieh, Liang, and an individual known as Ah Wah, also known as Richard Gee (the brother of Liang's

ex-husband) got together. At this point in time, UCE 4599 was working with Nieh on a potential deal for UCE 4599 to sell large quantities of purportedly stolen liquor to Chow / Nieh associates. Before Liang arrived, Ah Wah identified Liang as a friend of Chow. Once Liang arrived at the meeting, the conversation centered on UCE 4599's ability to supply stolen liquor to Liang. Nieh told Liang and Ah Wah that the liquor was stolen. Liang expressed concern that the liquor would not come with all the paperwork necessary to ship it to China.

The group continued their meeting that day at the Penang Restaurant in San Francisco. While there, Liang asked UCE 4599 if he had the ability to launder money out of Las Vegas. UCE 4599 said that he had access to offshore accounts and could launder money quite easily. In response to another question from Liang, UCE 4599 told her that he could launder money coming out of Hong Kong. He told Liang that money laundering was one of his specialties. UCE 4599 also told Liang that he had access to counterfeit cigarettes.

These conversations between Liang and UCE 4599 about potential criminal activities did not develop into anything tangible until 2013. In the meantime, through Chow and Nieh, UCE 4599 furthered a potential business relationship with Liang's former brother-in-law, Ah Wah. For instance, at meetings in September 2012, one of which was attended by Chow, UCE 4599 engaged in discussions about facilitating a bulk cash smuggling operation from Canada. Nothing ended up developing on that front.

Nevertheless, Liang moved forward with utilizing her Chow connection to UCE 4599 to initiate and participate in a money laundering scheme. On June 13, 2013, while driving UCE 4599 to a meeting, Nieh informed UCE 4599 that Liang wanted UCE 4599 to launder large sums of cash from Boston to the Bay Area. While in the car, Nieh called Liang and spoke to her in Chinese over the speakerphone. UCE 4599 captured the conversation on his recording device and the conversation was transcribed and translated. Liang asked Nieh "have you told him what I want then?" Nieh responded that he had. Liang asked if they could meet with UCE 4599 the next day. After Nieh hung up, he told UCE 4599 that Liang wanted to move cash and Nieh had told her that UCE 4599 would charge 10%. Nieh said that Liang wanted to start as soon as possible. UCE 4599 said he wanted to know how much money Liang had in mind and would ask her when they met the next day.

Liang did not show up for the meeting on June 14, 2013 with Nieh and UCE 4599. Again, Nieh spoke to Liang over the speakerphone in his car and UCE 4599 captured the conversation. Nieh told Liang that UCE 4599 said "yes." Liang asked if the rate would be 10% if all she wanted to do was "exchange" money. Nieh told her UCE 4599 would charge less for that. Liang laughed and said "ok."

Nieh conveyed a question from UCE 4599 as to when she wanted to get started. Liang responded that she would know more when she spoke to an unidentified male colleague. Nieh subsequently had a telephone conversation with Chow, during which they spoke in Chinese. Nieh told Chow that Liang had not shown up, but said "we completed our talks." UCE 4599 told Nieh that he would give Nieh a cut of the arrangement with Liang.

Five days later, on June 19, 2013, UCE 4599 met with Chow and Nieh. UCE 4599 gave Chow an envelope containing $2,000 cash as payment and thank you for the reverse money laundering transactions that UCE 4599 was doing with Nieh. UCE 4599 asked Chow if he had heard back from Liang and expressed frustration that Liang was "blowing me off." Chow told UCE 4599 that he spoke with Liang the previous evening and commented that he knew Liang's ex-husband, who was currently living in China. Chow described him as a very sophisticated burglar. UCE 4599 explained that Liang wanted to utilize his services the way that [co-defendants] Andy Li and Al Nhingsavath were using his services. Chow said that he thought Liang would be talking to UCE 4599 about some questions and mentioned that she had spoken to Nieh.

In making the comment to Chow about services to Li and Nhingsavath, UCE 4599 was referring to the money laundering / transfer services UCE 4599 has started providing to Li, Nhingsavath, and co-defendants. They were delivering cash proceeds from money laundering to UCE 4599's purported associates in East Coast cities, and UCE 4599 was delivering the cash to Li, Nhingsavath, and associates in San Francisco minus his service fee. Chow was aware of this because, as both Li and Nhingsavath testified at Chow's trial, they went to Chow to discuss the plan with him and Chow encouraged them to trust UCE 4599.

Not long after this, the discussions between Liang and UCE 4599 about money laundering came to fruition. UCE 4599 testified at the Chow trial that he eventually developed a business relationship with Liang and her son Serge Gee, whom UCE 4599 knew as "John." UCE 4599 described: "We were

laundering drug proceeds.  Picking it up – similar to Mr. Li and Mr. Nhingsavath, we were picking it up on the East Coast, various different cities, my associates were; and then delivering them – delivering them the cash on the back end here in San Francisco Bay Area minus a money laundering fee." *See* Chow trial transcript, v. 11, at 1610.  UCE 4599 said the total laundered was "hundreds of thousands of dollars, sir.  It was a lot of money." *Id*.

UCE 4599 testified that on the way to a meeting with Liang and Gee on August 11, 2013, Nieh relayed an inquiry from Liang as to whether UCE 4599 could do a quick money pickup in the Atlanta area.  UCE 4599 said he has associates who could take care of it.  Nieh related a conversation with Chow about the money laundering to the effect that Chow understood that UCE 4599 only had associates in the New York – New Jersey area.  According to Nieh, Chow said that UCE 4599 should charge Liang the cost of the flight for the associate to fly from New York to Atlanta.  Chow also told Nieh that UCE 4599 should be sure to count all the money.

UCE 4599 testified that he met with Liang, Gee, and Nieh that same day, August 11, 2013, and they discussed "moving large quantities of money from the East Coast to the West Coast.  I understood the source of supply – excuse me – the source of the money was derived from narcotics sales." *See* Chow trial transcript, v. 11, at 1624.  On the car ride back from the meeting, UCE 4599 told Nieh he pay Chow and Nieh for this new business activity "brought forth by Mr. Chow." *Id*. at 1625.  Nieh said that he always gave Chow half of everything.  Nieh added "I tell the Old Man everything; everything we've done.  I tell him about every deal that we've ever done." *Id*. at 1626.

The money laundering transactions involving Liang and her co-conspirators took place as follows:

| Count | Date | Delivery of Cash in Atlanta / Boston | Delivery of Cash in San Francisco |
|---|---|---|---|
| 167 | 8/9/13 | Gee delivers $93,870 to UCE | |
| 168 | 8/11/13 | | UCE 4599 delivers $90,180 to Liang & Gee |
| 172 | 8/26/13 | Gee delivers $155,900 to UCE | |
| 173 | 8/27/13 | | UCE 4599 delivers $149,900 to Gee |
| 177 | 9/3/13 | Liang/Gee associates deliver $76,030 to UCE | |
| 178 | 9/6/13 | | UCE 3322 delivers $73,000 to Liang & Gee |

UNITED STATES' SENTENCING MEMORANDUM (ELAINE LIANG)
CR 14-0196 CRB                                                      6

| Count | Date | Delivery of Cash in Atlanta / Boston | Delivery of Cash in San Francisco |
|---|---|---|---|
| 179 | 9/9/13 | Liang/Gee associate delivers $203,000 to UCE | |
| 180 | 9/10/13 | | UCE 4599 delivers $195,000 to Liang & Gee |
| 185 | 9/16/13 | Liang/Gee associate delivers $107,400 to UCE | |
| 186 | 9/18/13 | | UCE 4599 delivers $103,000 to Liang & Gee |
| 189 | 9/26/13 | Gee delivers $145,020 to UCE | |
| 190 | 9/26/13 | | UCE 4599 delivers $139,200 to Liang |
| 191 | 10/1/13 | Liang/Gee co-D Chen delivers $189,780 to UCE | |
| 192 | 10/1/13 | | UCE 4599 delivers $182,110 to Gee and co-D Lai |
| 193 | 10/4/13 | Liang/Gee associate delivers $150,000 to UCE | |
| 194 | 10/8/13 | | UCE 4599 delivers $144,000 to Gee |
| 196 | 10/15/13 | Chen delivers $102,790 to UCE | |
| 197 | 10/15/13 | | UCE 4599 delivers $98,678 to Lai |
| 198 | 10/23/13 | Chen delivers $134,145 to UCE | |
| 199 | 10/24/13 | | UCE 4599 delivers $128,800 to Lai |
| 202 | 12/5/13 | Chen delivers $199,240 to UCE | |
| 203 | 12/6/13 | | UCE 4599 delivers $191,270 to Lai |

At a meeting with Nieh and Chow at a restaurant on October 2, 2013, UCE 4599 told Chow that he was not impressed with the way Gee dressed, *i.e.* in a hat or shirt bearing profanity. Chow said that was not the way that Gee usually dressed, but he was selling in the black community and was dressing appropriately for that role. At the meeting, UCE 4599 gave Chow $1,500 for facilitating the multiple money laundering transactions with Liang and Gee. By this time, UCE 4599 had also paid Nieh at least $1,600 for his role in setting up the transactions. On January 9, 2014, UCE 4599 paid Chow another $1,500 and gave Nieh another $500. UCE 4599 told Chow that this was payment for the money laundering deals with Liang and Gee.

When Liang's residence was searched on March 26, 2014, agents found no firearms. They did, however, recover marijuana and $8,500 in currency.

1  Liang engaged in these money laundering transactions as part of the criminal activity of Chow's
2  enterprise. She met UCE 4599 through Chow and Nieh, and only was able to deal with UCE 4599
3  because Chow provided the green light. Nieh was involved in setting up the relationship and conveying
4  information back and forth to and from Chow. It was only through her relationship to Chow's enterprise
5  and his approval of her criminal activity that she was able to take advantage of the opportunity to move
6  nearly $1.6 million in proceeds from her and her son's marijuana trafficking operation from the East
7  Coast to the West Coast.

### B. Calculation of Liang's Sentencing Guideline Range

9  The Probation Officer has determined that Liang's total offense level, taking into account
10 relevant conduct, specific offense characteristics, and acceptance of responsibility, is level 29. *See*,
11 Liang PSR at ¶ 102. The government concurs in this determination.

12  As discussed in the United States' Memorandum on Law and Statement Re Relative Culpability,
13 filed separately, although Liang was a participant in the Chow enterprise, her conduct and the relevant
14 conduct for which she is to be held accountable must be based on an individualized assessment, taking
15 into account the principles of relevant conduct set forth in U.S.S.G. § 1B1.3(a)(1) and Application Note
16 3. That is, she participated in the enterprise in order to engage in money laundering, not to engage in
17 cigarette trafficking, firearms trafficking, or any other crimes. Therefore, the conduct of other members
18 of the enterprise in those illegal pursuits is not relevant conduct for Liang.

19  On the other hand, Liang's relevant conduct is not limited just to the money laundering in which
20 she, Serge Gee, Chen, and Lai engaged. As set forth in the United States' Memorandum of Law, the
21 Ninth Circuit has held that a RICO conspiracy is a single-object conspiracy "with the object being to
22 engage in racketeering." *United States v. Barragan*, 871 F.3d 698, 717 (9th Cir. 2017). "The predicate
23 racketeering acts are not, in themselves, conspiratorial objects." *Id*. In other words, the Chow RICO
24 conspiracy members engaged in a conspiracy with one object, not in a multiplicity of discrete
25 conspiracies. As such, each defendant is accountable for his or her own conduct, as well as the conduct
26 of others that was within the scope of the jointly undertaken criminal activity that was reasonably
27 foreseeable to that defendant. *See*, § 1B1.3, App. N. 3.

28  Applying these principles to Liang, the jointly undertaken criminal activity in which she

UNITED STATES' SENTENCING MEMORANDUM (ELAINE LIANG)
CR 14-0196 CRB                                                8

participated was the Chow RICO enterprise. That is the relevant conspiracy, not just a conspiracy to launder money with Gee, Chen, and Lai. The particular aspect of the enterprise's activities in which Liang participated was money laundering. That was the scope of the underlying enterprise activity in which she agreed to participate and from which she benefitted. Accordingly, under § 1B1.3(a)(1)(B) and the explanation set forth in Application Note 3, Liang is accountable for all money laundering activities of the enterprise that were reasonably foreseeable to her.

As a close associate of Chow and Neih, and as a participant in the Chow enterprise, it was reasonably foreseeable to Liang that other enterprise participants were engaging in money laundering with UCE 4599. Chow and Nieh were at the center of the enterprise and were involved in setting up Liang and Gee with UCE 4599. They monitored and were involved in the progress of the transactions, and benefitted financially from the successful movement of Liang's and Gee's illegal drug proceeds from coast to coast facilitated by UCE 4599. In addition, UCE 4599 had conversations with Liang about his ability to money launder and Liang was aware that Chow and Nieh had other associates, including her former brother-in-law Ah Wah (Richard Gee).

Application Note 3 also provides that "[a] defendant's relevant conduct does not include the conduct of members of a conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct." Applying that provision to Liang, even though money laundering by others associated with the Chow enterprise was reasonably foreseeable to her, any such activities that took place before she began her money laundering cannot be counted as relevant conduct.

Consistent with these principles, then, the relevant conduct for Liang is the amount of money laundered by her group (Serge Gee, Lai, and Chen), that is, $1,557,175 *and* the identical type of money laundering engaged in during the same time frame by RICO co-defendants Li, Nhingsavath, and Mastrangelo, that is, $781,345. Accordingly, the money laundering figure for Liang for relevant conduct purposes is $2,338,520, rendering an initial base offense level of 24. *See*, PSR at ¶ 92. It is worth noting that even if Liang is only held accountable for the amount of money she laundered with Gee, Chen, and Lai, the base offense level would still be level 24.

The government agrees with the Probation Officer's determination regarding specific offense characteristics and acceptance of responsibility. *See*, PSR, ¶¶ 93-101. Accordingly, the total offense

UNITED STATES' SENTENCING MEMORANDUM (ELAINE LIANG)
CR 14-0196 CRB                                         9

1  level is level 29.  *Id*. ¶ 102.  Liang falls within Criminal History Category II.  *Id*. at ¶¶ 103-108.
2  Accordingly, Liang's sentencing guideline range is 97-121 months.  *Id*. at ¶ 134.

3        **C.**       **Government's Sentencing Recommendation**

4      The government recommends that the Court impose a sentence of 97 months imprisonment, a
5  three-year term of supervised release, and special assessment of $100.  The government concurs with the
6  Probation Officer's determination that Liang is not in a financial positon to pay a fine.  Restitution in not
7  applicable in Liang's case.

8      The government submits that this low-end sentence appropriately addresses the factors set forth
9  in 18 U.S.C. § 3553(a) and is a sentence that is sufficient, but not greater than necessary, to comply with
10 the purposes of sentencing set forth in that provision.

11     In terms of the nature and seriousness of the offense, and the need for the sentence to reflect the
12 seriousness of the offense, promote respect for the law, and provide adequate deterrence to criminal
13 conduct, this Court is well aware of the extremely serious nature of the enterprise that Chow operated.
14 The scope of illegal activities in which enterprise members engaged, for which Chow provided
15 protection, and from which Chow benefitted in terms of power, status, and financial renumeration, was
16 broad.  They ranged from murder to firearms trafficking to drug trafficking to money laundering to sale
17 of stolen goods.

18     Liang's involvement with the enterprise was limited to laundering of money that was proceeds of
19 marijuana trafficking, and Liang's activities involved no violence or firearms.  That places Liang in a
20 different position on the seriousness continuum from certain other RICO conspirators.  But it does not
21 take away from the fact that she participated in Chow's dangerous criminal enterprise, benefitted from
22 that relationship personally, and helped further Chow's power.  Those are all considerations that warrant
23 a substantial sentence.

24     The Probation Officer is recommending a variance to a sentence of 36 months for Liang.  One of
25 the bases for the variance is an assessment that Liang's criminal history category overrepresents the
26 seriousness of her criminal history, and the applicable guideline range should be 87 to 108 months.
27 Even if the Court was to adopt that range, a variance to 36 months is nearly a 60% reduction from the
28 low end of that lower range.  The government submits that even in light of the mitigating factors

presented by the Probation Officer, a variance to that extent is unwarranted and inappropriate in light of the serious nature of the overall offense conduct and the purposes of sentencing in § 3553(a).

In particular, the government disagrees with the Probation Officer using Alan Chiu and the sentence[3] this Court imposed on Chiu, as the benchmark from which to remedy any perceived sentencing disparity. Simply stated, Chiu's situation is not comparable to Liang's. The fact that Chiu engaged in money laundering and has already been sentenced for that conduct, does not necessarily mean that he should act as the touchstone for determining appropriate sentences for other defendants. In fact, as a RICO defendant, Chiu was the least culpable participant and a bit of an anamoly.

The Probation Officer reasons that Chiu received a sentence of 27 months; Liang is more culpable than Chiu; therefore, to avoid sentencing disparity, Liang should receive a sentence of 36 months. In fact, there are several important facts that distinguish Liang and Chiu and demonstrate why Liang should receive a more substantial sentence than Chiu.

First, while Chiu and Liang both participated in money laundering as part of the Chow enterprise, Chiu parachuted in at Chow's direction when Chow cut out Siu in order to provide a money laundering service to UCE 4599. Chiu laundered for UCE 4599 what Chiu believed were proceeds illegal activity; however, the money was not actually illegal proceeds. Furthermore, Chiu was not involved in any criminal conduct apart from laundering UCE 4599's money.

The nature of Liang's money laundering with UCE 4599 was entirely different. She was not providing a money laundering service for UCE 4599. To the contrary, she sought out and paid UCE 4599 to launder money for her. The money was actual illegal proceeds; it was $1.5 million in proceeds of marijuana trafficking that Liang and her colleagues wanted moved across country. Thus, unlike Chiu, Liang was involved in criminal activity apart from the money laundering with UCE 4599.

Second, the amount of cash that Chiu laundered for UCE 4599 was $187,000. The amount of cash that Liang and her associates had UCE 4599 launder was eight times that amount.

Third, the best word to describe Chiu's acumen in carrying out criminal activity was hapless. He forgot to bring his checkbook to a meeting with UCE 4599, so he was unable to return laundered money

---

[3] Chiu's guideline range was 46 to 57 months. The government recommended a sentence of 46 months

to UCE 4599.  Chow and Nieh considered Chiu inept.  Chiu was so unclear on the concept that he ran a marijuana grow in the house that he knew would be visited by Pretrial Services.  Liang was neither hapless nor inept.  She proved to be a shrewd criminal businesswoman.  In her dealings with Chow, Nieh, and UCE 4599 she was careful and judicious.  She was obviously successful enough in her marijuana trafficking endeavors so as to realize over a million dollars in proceeds that needed to be moved from one coast to another within a period of four months.

In sum, a sentence of 36 months is inappropriately low under all the circumstances present here and are inconsistent with the § 3553(a) purposes of sentencing.

## **CONCLUSION**

For all the reasons set out above, the government respectfully recommends that the Court sentence Elaine Liang to imprisonment for a period of 97 months, to be followed by a term of supervised release of three years.  The Court must also order a special assessment of $100.

DATED: December 8, 2017                          Respectfully submitted,

BRIAN J. STRETCH
United States Attorney

/s/
SUSAN E. BADGER
WILLIAM FRENTZEN
S. WAQAR HASIB
Assistant United States Attorneys